UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
ROBERT PAYTON,

                      Plaintiff,

         - against -

UNITED STATES POSTAL SERVICE,
NATIONAL ASSOCIATION OF LETTER
CARRIERS,

                      Defendants.
------------------------------------------------------------- x

**MEMORANDUM AND ORDER**

16 CV 2794 (RJD) (RER)

DEARIE, District Judge:

      Plaintiff Robert Payton brings this employment action against his former employer, the United States Postal Service ("USPS") and his union, the National Association of Letter Carriers ("NALC" or "the Union"). Plaintiff alleges he was wrongly discharged from his employment as a letter carrier, and that he is entitled to reinstatement, compensatory damages, interest and attorney's fees under the Family and Medical Leave Act of 1993 ("FMLA"). Compl. ¶¶ 66-75, ECF No. 1. Plaintiff also alleges that USPS violated its collective bargaining agreement when it terminated Plaintiff, and that the Union violated its duty of fair representation under Section 301(a) of the Labor Management Relations Act of 1947. Id. ¶¶ 76-78. Defendants both move to dismiss this latter "hybrid" claim—against USPS for breach of the collective bargaining agreement, and against the Union for violation of its duty of fair representation—under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motions are granted.

## BACKGROUND

Unless otherwise noted, all facts are drawn from the Complaint and assumed to be true for the purposes of this motion.

Plaintiff was first hired as a seasonal/temporary employee of the USPS at the Rochdale, New York station in or around 1990. Compl. ¶ 11. In late 1997, Plaintiff was hired as a full time regular letter carrier at that station, and two years later he transferred to the Jamaica Main post office location in Queens, New York. Id. ¶ 12. In 2008, Plaintiff became a parcel post driver for the Hollis, New York station. Id. ¶ 14.

Between 2009 and 2014, Plaintiff and his supervisor at the Hollis station had a series of conflicts related to Plaintiff's performance of his duties and also related to Plaintiff's numerous requests for FMLA leave due to a recurring medical condition. Id. ¶¶ 15-26. Plaintiff filed a grievance with the Union in June 2014 and filed a complaint against his supervisors with the Equal Employment Opportunity Commission ("EEOC") in August 2014. Id. ¶¶ 27-28. On September 17, 2014 Plaintiff attended an EEOC mediation with USPS management. Plaintiff voiced his grievances and USPS management assured him that USPS and the Union would continue to pursue his grievance outside of mediation. Id. ¶ 29. On September 25, 2014, a USPS supervisor called Plaintiff and told him to return to work. Id. ¶ 30. Payton spoke with the Union Vice President, who told him the Union had negotiated terms for him to return to work, though he did not inform Plaintiff of the terms of the agreement. Id. ¶¶ 30-31.

Plaintiff's conflicts with his supervisors continued throughout 2014. See Id. ¶¶ 33-40. In October 2014, a USPS customer complained that a parcel was left at her residence without her having signed for it, as was required. Id. ¶¶ 41-44. As a result, USPS claimed that Plaintiff had violated his employment agreement and terminated his employment in early December 2014. Id.

Plaintiff filed a grievance with his local branch of the Union, NALC Branch 562, soon thereafter, and the Union representatives assured him that the grievance process was proceeding and that they were advocating on his behalf. Id. ¶¶ 45-48. On February 4, 2015, the USPS dispute resolution team issued a decision (the "Step B decision") affirming the decision of USPS to discharge Plaintiff and finalizing his termination. Id. ¶¶ 48-50. Plaintiff alleges that the Union never informed him of this Step B decision, and that he only learned his termination was final after a coworker telephoned him several days later. Id. ¶ 49. Plaintiff went to the union hall on or around February 10, 2015, where he was shown the Step B decision. Id. ¶ 50.

After he received the Step B decision, Plaintiff alleges that he filed a complaint for harassment and discrimination with the EEOC against his former supervisors at USPS.[1] Id. ¶ 53. On July 27, 2015, Plaintiff filed a charge against NALC Branch 562 with the National Labor Relations Board ("NLRB") for breach of its duty of fair representation during the USPS grievance process. Id. ¶ 54. Plaintiff also filed a charge against USPS, alleging that USPS had retaliated against him for filing the EEOC complaint against his supervisors in 2014. Id.

Plaintiff withdrew his NLRB charges on August 12, 2015. Id. ¶ 55. Plaintiff then filed a new NLRB charge against the Union on August 27, 2015,[2] this time alleging that NALC Branch 562 had refused to process his grievance for arbitrary, capricious, and discriminatory reasons. Id. ¶ 56; see also NALC's Letter Motion for Pre-Motion Conference, July 20, 2016 ("First NALC

---

[1] USPS disputes Payton's allegation that he filed a complaint with the EEOC. See USPS's Second Letter in Opposition, October 25, 2016 ("Second USPS Letter"), at 2, ECF No. 17. USPS does not dispute that Plaintiff filed a claim with the NLRB. Id. Because the undisputed filing of the NLRB claim supports the Court's decision, the EEOC complaint is not addressed.

[2] Plaintiff also filed a second NLRB charge against USPS on October 30, 2015, alleging that USPS had discharged him because of "prior EEO activity and filed [sic] pre-complaint charges." See Second USPS Letter, Ex. 3.

Letter"), Ex. C ("August NLRB Charge"), ECF No. 7. The regional director of NLRB declined to issue a complaint, and Plaintiff appealed. Compl. ¶ 56. On February 1, 2016, the NLRB General Counsel upheld the Regional Director's decision not to issue a complaint against the Union and USPS. Id. Plaintiff filed his Complaint with the Court on June 1, 2016.

## DISCUSSION

### A. The Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Brown v. Daikin Am. Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In reviewing the complaint, this Court "accept[s] all well-pleaded allegations in the complaint as true [and] draw[s] all reasonable inferences in the plaintiff's favor." Chabad Lubavitch of Litchfield Cnty. Inc. v. Litchfield Historic Dist. Comm'n, 768 F.3d 183, 191 (2d Cir. 2014) (second alteration in original) (quoting Bigio v. CocaCola Co., 675 F.3d 163, 169 (2d Cir. 2012)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### B. Breach of Collective Bargaining Agreement and Duty of Fair Representation

Defendants argue that Plaintiff's Third Claim, against USPS for breach of the collective bargaining agreement and against the Union for breach of its duty of fair representation, is time barred by the six-month statute of limitations. The Court agrees.

"An employee's claim against a union for breaching its duty of fair representation is a cause of action 'implied under the scheme' of the National Labor Relations Act." Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc., 742 F.3d 42, 46 (2d Cir. 2014)

(quoting DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983)). Under this scheme, "an employee may bring a complaint against her union and/or her employer alleging (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing her grievance against the employer." White v. White Rose Food, 128 F.3d 110, 113 (2d Cir. 1997). The resulting "hybrid" claim is governed by the six-month statute of limitations set out by Section 10(b) of the National Labor Relations Act. See DelCostello, 462 U.S. at 172. The limitations period begins to run "from the time when the union member 'knew or reasonably should have known that a [breach of the duty of fair representation] had occurred.'" Kavowras v. N.Y. Times Co., 328 F.3d 50, 55 (2d Cir. 2003) (alteration in original) (quoting Santos v. Dist. Council of N.Y.C., 619 F.2d 963, 969 (2d Cir. 1980).

In this circuit, if a party files a charge with the NLRB alleging breach of the duty of fair representation, and then later files a complaint alleging the same general conduct, the filing of the NLRB charge demonstrates actual knowledge of the breach. Kavowras, 328 F.3d at 55 ("In his NLRB charge, [the plaintiff] alleged in a general manner the same misconduct by the Union which he charged in his complaint. His bringing of the NLRB charge establishes that he had actual knowledge of the breach . . . ."); Haygood v. Local 1181-1061, Amalgamated Transit Union, No. 14-CV-3998 (MKB) (LB), 2016 WL 1255728, at *5 (E.D.N.Y. Mar. 29, 2016) ("[W]here a plaintiff has filed a charge with the NLRB alleging the same misconduct that is pled in a subsequent complaint, the filing of that NLRB charge can establish that the plaintiff had actual knowledge of the breach.").

Plaintiff was plainly aware of the Union's alleged breach when he filed his initial charge with the NLRB on July 27, 2015. This charge alleged that NALC Branch 562 had "failed and refused to process [Plaintiff's] grievance regarding his discharge from the USPS for arbitrary and

discriminatory reasons." First NALC Letter, Ex. B, ECF No. 7. He later withdrew this charge and filed a new charge against the Union on August 27, 2015, essentially repeating his earlier claim. See August NLRB Charge. The Complaint rehashes these same allegations a third time. As such, Plaintiff's bringing the NLRB charge on July 27, 2015 demonstrates that he had actual knowledge of the Union's alleged breach of its duty of fair representation at that time. Even though this charge was later withdrawn, the act of filing the charge shows that Plaintiff was aware of the alleged breach. Since the Complaint was not filed until June 1, 2016, more than ten months after the initial NLRB charge was filed, Plaintiff's hybrid claim against USPS and the Union is time-barred.

Plaintiff argued in his August 1, 2016 letter to the Court that the Union had an affirmative duty to inform him of the six-month statute of limitations and that, given the Union's failure to do so, the limitations period should not apply. Plaintiff's First Reply Letter in Opposition, August 1, 2016, at 2-3, ECF No. 9. At the pre-motion conference held on September 29, 2016, the Court asked Plaintiff's counsel if she could produce any authority for the proposition that the Union had the duty to inform Plaintiff of the limitations period. Plaintiff's counsel candidly stated that she did not know of any such authority, and the Court has likewise been unable to unearth any relevant authority. Accordingly, the Court is not persuaded that the Union was duty-bound to provide notice of the statue of limitations to Plaintiff.

After the pre-motion conference, Plaintiff submitted a letter arguing that the six-month limitations period should have been tolled until the NLRB issued its decision in February 2016 declining to issue a complaint. Plaintiff's Second Reply Letter in Opposition, October 11, 2016, at 2, ECF No. 15. In support of this argument, Plaintiff first cites Carrington v. United States, 926 F. Supp. 2d 3 (D.D.C. 2013). Carrington involved a claim by a dismissed former postal

6

worker against the USPS and his union, in which the union had tried to get the plaintiff reinstated at his job through an arbitration with USPS. Id. at 5. The union was unsuccessful, largely because the union representative did not file the grievance in a timely manner, leading the plaintiff to file his hybrid Section 301 suit against the USPS and the union in federal court. Id. at 5-6. The court held that "[w]here an employee chooses to use private dispute mechanisms prior to filing suit in federal court, there is persuasive authority suggesting that the statute of limitations period may be tolled at the discretion of the district court." Id. at 7. Carrington relied on Robinson v. Central Brass Manufacturing Company, 987 F.2d 1235 (6th Cir. 1993), which Plaintiff also cites, and which tolled the limitations period while a dismissed employee pursued her claim for breach of the duty of fair representation against her union through the union's internal grievance process. Id. at 1239.

Neither of these cases aid Plaintiff. In Carrington, the plaintiff was actively represented by his union throughout the arbitration, and he only discovered the union's breach of its duty of fair representation once the arbitration had concluded. 926 F. Supp. 2d at 7. The court's decision that the limitations period did not begin until the arbitration concluded was therefore consistent with the rule that the limitations period begins when the plaintiff "knew or reasonably should have known that such a breach had occurred." Santos, 619 F.2d at 969.

In Robinson, the plaintiff chose to pursue his claims against the union through the union's internal private settlement mechanism before eventually turning to the federal courts for relief. 987 F.2d at 1237. The court determined that failing to toll the statute of limitations during the private settlement process would "undermine the federal policy of promoting private resolution of disputes while ensuring a judicial forum to resolve disputes." Id. at 1244. Robinson is not applicable here because Plaintiff was not pursing a *private* resolution with the Union.

7

Rather, Plaintiff sought to resolve his disputes with USPS and the Union through the NLRB and the EEOC, which are government agencies. Courts have consistently refused to toll the statute of limitations where a claim has been filed with these agencies. See Velasquez v. Metro Fuel Oil Corp., 12 F. Supp. 3d 387, 412 n.13 (E.D.N.Y. 2014) ("The Court also notes that 'NLRB proceedings do not toll the six-month statute of limitations applicable to this action.'" (quoting Ode v. Terence Cardinal Cooke, No. 08-CV-1528 (SHS), 2008 WL 5262421, at *3 (S.D.N.Y. Dec. 12, 2008))); Mahamadou v. 1199 SEIU United Healthcare Workers E., No. 15-CV-7439 (PKC), 2016 WL 3566235, at *3 (S.D.N.Y. June 24, 2016) ("The filing of an EEOC charge, however, does not toll the statute of limitations for related claims."); see also Kalyanaram, 742 F.3d at 49 (declining to toll the statute of limitations "where a plaintiff pursues parallel avenues of relief." (citing Kolomick v. United Steelworkers of America, District 8, 762 F.2d 354, 356 (4th Cir.1985)). Accordingly, the Court concludes that the limitations period was not tolled during the NLRB proceedings—it began to run on July 27, 2015, when Plaintiff filed his first claim with the NLRB, and expired six months thereafter. The Third Claim in Plaintiff's Complaint is therefore untimely.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions to dismiss the Third Claim of the Complaint as untimely. The First and Second Claims of the Complaint are left undisturbed.

SO ORDERED.

Dated: Brooklyn, New York
December 29, 2016

                                                s/ Raymond J. Dearie
                                                RAYMOND J. DEARIE
                                                United States District Judge